1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   FELIPE ROMAN HOLGUIN,                    Case No.  1:20-cv-01715-NONE-HBK

12                   Petitioner,              PETITIONER'S REQUEST FOR AN
                                              EVIDENTIARY HEARING AND
13        v.                                  APPOINTMENT OF COUNSEL
                                              INCORPORATED IN HIS PETITION AND
14   CHRISTIAN PFEIFFER,                      OPPOSITION ARE DENIED

15                   Respondent.              FINDINGS AND RECOMMENDATIONS TO
                                              GRANT RESPONDENT'S MOTION TO
16                                            DISMISS[1]

17                                            (Doc. No. 8)

18                                            FOURTEEN-DAY OBJECTION PERIOD

19
          Petitioner Felipe Roman Holguin ("Petitioner" or "Holguin"), a state prisoner is
20
     proceeding on his *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 constructively
21
     filed on November 29, 2020.[2]  (Doc. No. 1, "Petition").  In response, Respondent filed a motion
22
     to dismiss the Petition as untimely on February 9, 2021.  (Doc. No. 8).  Respondent submitted
23
     exhibits in support of its Motion.  (Doc. No. 10).  After being granted an extension of time,
24

25   _____

26   [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
     (E.D. Cal. 2019).
27   [2] Although docketed in this Court on December 7, 2020, the Court applies the "prison mailbox rule" to *pro
     se* prisoner petitions, deeming the petition filed on the date the prisoner delivers it to prison authorities for
     forwarding to the clerk of court.  *See Saffold v. Newland,* 250 F.3d 1262, 1265, 1268 (9th Cir.2000),
28   *overruled on other grounds, Carey v. Saffold,* 536 U.S. 214 (2002).

1    Petitioner filed an opposition to Respondent's Motion on March 15, 2021.  (Doc. No. 14).

2    Respondent, after moving and being granted an extension of time, filed a reply and additional

3    exhibits in support on July 26, 2021.  (Doc. No. 21)[3].  For the reasons stated below, the

4    undersigned recommends the District Court grant Respondent's motion to dismiss.

5                                        **I.  BACKGROUND**

6           Holguin is serving a 25-year to life sentence for his plea-based first-degree murder

7    conviction entered by the Madera County Superior Court on February 23, 2016 (case no.

8    MCR052047).  (Doc. No. 1 at 1).  The Petition raises the following grounds for relief: (1)

9    Petitioner's guilty plea was unlawfully induced or not made voluntarily because Petitioner was

10   intoxicated and suffering from mental health issues at the time of the plea; and (2) trial counsel

11   rendered constitutionally ineffective assistance when he failed to properly advise Petitioner on his

12   guilty plea and failed to request a competency hearing prior to Petitioner entering his guilty plea.

13   (*See generally id*.).

14          At the outset, the Court takes judicial notice that Petitioner previously sought habeas relief

15   in this Court.  *See Holguin v. On Habeas Corpus*, 1:19-cv-00380-LJO-SKO (E.D. Cal. June 13,

16   2019).  That case was dismissed for Petitioner's failure to exhaust his claims.  Preemptively,

17   Petitioner argues that he is entitled to equitable tolling of the statute of limitations due to his

18   mental illness.  (Doc. No. 1 at 9, 16).  Alternatively, Petitioner seeks to have the Court consider

19   the instant petition as an amended in his prior case.  (*Id*. at 9).  Petitioner's previous petition was

20   dismissed as unexhausted, and the case was closed on June 13, 2019, over 18 months before he

21   initiated this action.  Because that case was closed before he filed the instant petition, the Court

22   cannot accept the instant petition as an amendment to his previous petition.  However, because

23   the prior case was dismissed without prejudice for lack of exhaustion, the instant petition is not a

24   second or successive petition.  *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

25

26   _____

27   [3] On August 26, 2021, Petitioner filed an untimely and unauthorized amended opposition to Respondent's
     motion to dismiss.  (Doc. No. 23).  Neither the Federal Rules of Civil Procedure nor the Local Rules
     provide for such a filing.  However, considering Petitioner's *pro se* status, the Court considered this

28   amended opposition but found it did not change the Court's analysis.

1

## II.  APPLICABLE LAW

2

### A.  Standard of Review

3       Under Rule 4, if a petition is not dismissed at screening, the judge "must order the

4   respondent to file an answer, motion, or other response" to the petition.  R. Governing 2254 Cases

5   4.  The Advisory Committee Notes to Rule 4 state that "the judge may want to authorize the

6   respondent to make a motion to dismiss based upon information furnished by respondent."  In

7   *White v. Lewis*, 874 F.2d 599, 602-03 (9th Cir. 1989), the Ninth Circuit held that a motion to

8   dismiss based on procedural default is proper in habeas proceedings.  Since that time, the Ninth

9   Circuit has affirmed cases where habeas petitions were dismissed on a respondent's motion to

10   dismiss for untimeliness.  *Orthel v. Yates*, 795 F.3d 935, 938 (9th Cir. 2015) (affirming district

11   court's grant of respondent's motion to dismiss petition as untimely because petitioner "did not

12   establish an exceptional circumstance that would warrant equitable tolling"); *Stancle v. Clay*, 692

13   F.3d 948, 951 (9th Cir. 2012) (same); *Velasquez v. Kirkland*, 639 F.3d 964, 966 (9th Cir. 2011).

14   In doing so, the Ninth Circuit has explicitly relied on information supplied outside the pleadings

15   and its attachments, such as medical records.  *Orthel*, 795 F.3d at 940.  The undersigned finds

16   because the statute of limitation is a procedural bar, the Court may consider the documents

17   submitted by Petitioner and Respondent for purposes of determining whether Petitioner is entitled

18   to equitable tolling.  *Id.*

19

### B.  AEDPA's Statute of Limitations

20       Title 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act

21   of 1996, sets a one-year period of limitations to the filing of a habeas petition by a person in state

22   custody. This limitation period runs from the latest of:

23
24
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

25
26
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

27

28
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

3

recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Here, Holguin does not allege, nor does it appear from the pleadings or the record, that the statutory triggers in subsections (B)-(D) apply. Thus, the limitations period began to run on the date Holguin's conviction became final by the conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A); *Jimenez v. Quarterman*, 555 U.S. 113, 120 (2009).

Holguin directly appealed his conviction. (Doc. No. 10-2). The California Supreme Court denied review of the California Court of Appeal's affirmance of Holguin's conviction on September 12, 2018. (Doc. No. 10-4). Accordingly, Holguin's conviction became final 90 days later, on December 11, 2018. *See Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir.1999); S. Ct. Rule 13. AEDPA's one-year statute of limitations began running the next day, December 12, 2018. Therefore, Holguin had until December 12, 2019 to file his federal habeas petition, absent statutory or equitable tolling. *See Patterson v. Stewart*, 251 F.3d 1243, 1246-47 (9th Cir. 2001) (adopting anniversary method to calculate one-year statutory period).

Holguin sought habeas relief three times in the state courts. Holguin filed his first state habeas petition in the Madera County Superior Court on January 17, 2019. (Doc. No. 10-5). That petition was denied on March 27, 2019. (Doc. No. 10-6). Holguin then sought habeas review in the Madera County Superior Court on January 17, 2020. (Doc. No. 10-7). That petition was denied on February 7, 2020. (Doc. No. 10-8). Finally, Holguin sought habeas relief in the California Supreme Court on March 20, 2020. (Doc. No. 10-9). That petition was denied on July 8, 2020. (Doc. No. 10-10). As noted *supra*, applying the mailbox rule, Holguin filed his federal petition in this action on November 29, 2020. (Doc. No. 1).

### III.  ANALYSIS

#### A.  Statutory Tolling

##### 1.  Applicable Law

4

The federal statute of limitations tolls for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). An application for post-conviction or other collateral review is "pending" in state court "as long as the ordinary state collateral review process is 'in continuance'—*i.e.*, 'until the completion of' that process.'" *Carey v. Saffold*, 536 U.S. 214, 219 (2002) (citations omitted). "California's collateral review system differs from that of other States in that it does not require, technically speaking, appellate review of a lower court determination." *Id*. at 221. Instead, petitioners are required to file an original habeas petition and a subsequent appeal in each level of court (superior, appellate, and supreme) within a "reasonable" period. *Id.* at 221-22; *Robinson v. Lewis,* 9 Cal.5th 883, 897 (2020) ("There are no specific time limits for either filing the first [habeas] petition or filing subsequent petitions in a higher court. Instead, California courts employ a *reasonable*ness standard. The claim must generally be presented without substantial delay."). A petition is considered no longer "pending," and the petitioner is barred from AEDPA statutory tolling if an unreasonable amount of time elapsed between the filing of state court habeas petitions. *Saffold*, 536 U.S. at 221.

To determine whether a habeas claim was filed within a reasonable amount of time, California courts consider three factors. *Robinson,* 9 Cal.5th at 897. First, "a claim must be presented without *substantial delay.*" *Id*. (emphasis in original). "'Substantial delay is measured from the time the petitioner or his or her counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim.'" *Id*. (quoting *In re Robbins*, 18 Cal. 4th 770, 780 (Cal. 1998). Second, if a petition was filed with substantial delay, a petition may yet be considered on the merits if the "petitioner can demonstrate *good cause* for the delay." *Id*. (emphasis in original). Third, a petition filed without good cause for substantial delay will be considered if it falls under one of four narrow exceptions. *Id*. Only three of the four exceptions are relevant to noncapital cases: (1) an "'error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner;'" (2) "'the petitioner is actually innocent of the crime or crimes of which he or she was convicted;'" and (3) "'the petitioner was convicted or sentenced under an invalid

1    statute.'" *In re Reno*, 55 Cal. 4th 428, 460 (Cal. 2012) (quoting *Robbins*, 18 Cal. 4th at 780).  The

2    California Supreme Court has opined that a six-month gap delay would normally be "unduly

3    generous," but adopted "a period of 120 days as the safe harbor for gap delay" for the filing of

4    habeas petitions between state court levels.  *Robinson*, 9 Cal. 5th at 901.  "A new petition filed in

5    a higher court within 120 days of the lower court's denial will never be considered untimely due

6    to gap delay." *Id*.

7           For petitions filed in a "reasonable time," a petitioner may count as "pending" the "days

8    between (1) the time the lower state court reached an adverse decision, and (2) the day he filed a

9    petition in the higher state court." *Evans*, 546 U.S. at 193.  This Court "must itself examine the

10   delay in each case and determine what the state courts would have held in respect to

11   timeliness." *Id.* at 198.

12                      **2.  The Petition is Untimely Despite Statutory Tolling**

13          Here, AEDPA's statute of limitations began running on December 12, 2018, when

14   Holguin's conviction became final and continued to run until Holguin filed his first state habeas

15   petition on January 17, 2019.  "AEDPA's statute of limitations is not tolled from the time a final

16   decision is issued on direct state appeal and the time the first state collateral challenge is filed

17   because there is no case 'pending' during that interval." *Nino v. Galaza*, 183 F.3d 1003, 1006

18   (9th Cir. 1999).  Accordingly, 36 days elapsed between the date the statute of limitations began to

19   run and the filing of Holguin's first habeas petition.  Because Petitioner's first state habeas

20   petition (Doc. No. 10-5) was "properly filed," the statute of limitations was tolled from its filing

21   on January 17, 2019 until its denial on March 27, 2019 (Doc. No. 10-6).  *See Artuz v. Bennett*,

22   531 U.S. 4, 8 (2000) (A state habeas petition is "'properly filed' when its delivery and acceptance

23   are in compliance with the applicable laws and rules governing filings."); *Pace v. DiGuglielmo*,

24   544 U.S. 308, 410 (2005).

25          Holguin's second state habeas petition filed January 17, 2020 was denied as untimely by

26   the state superior court on February 7, 2020.  (Doc. Nos. 10-7, 10-8).  Thus, this second state

27   habeas petition did not toll the statute of limitations since it was not "properly filed."  Untimely

28   petitions are not "properly filed." *Pace v. DiGuglielmo*, 544 U.S. at 408, 414 (2005) (quoting

1    *Saffold*, 536 U.S. at 226 ("When a postconviction petition is untimely under state law, 'that [is]

2    the end of the matter' for purposes of § 2244(d)(2).").  Alternatively, Holguin reaps no benefit

3    from his second state habeas petition because tolling does not apply to periods between petitions

4    that do not seek relief in a progression from the state superior court, appellate court, and supreme

5    court.  *Banjo. Ayers*, 614 F.3d 964, 968 (9th Cir. 2010).  In other words, no statutory tolling

6    applies to periods between petitions that do not seek relief in a progression from the state superior

7    court, appellate court, and supreme court.  *Nino*, 183 F.3d 1003, 1006-07 (The limitations period

8    "remains tolled during the intervals between the state court's disposition of a state habeas petition

9    and the filing of the petition at the next state appellate level."); *Delhomme v. Ramirez*, 340 F.3d

10   817, 821 n.3 (9th Cir. 2003) ("[T]he crucial issue for tolling purposes is whether the petitioner has

11   timely proceeded to the next appellate level, since the one year filing period is tolled to allow the

12   opportunity to complete one full round of review.").  Here, Holguin consecutively sought habeas

13   relief twice in the state superior court.  Therefore, this second petition did not stop the AEDPA

14   clock.

15         Holguin's third state habeas petition filed before the California Supreme Court on March

16   30, 2020 was denied on July 8, 2020.  (Doc. Nos. 10-9; 10-10).  Respondent argues Holguin gains

17   no tolling from his third state habeas.  (Doc. No. 8 at 5-6).  First, because the second superior

18   court habeas petition was not properly filed, it is as if the second petition never existed.  *See*

19   *Lakey v. Hickman*, 633 F.3d 782, 785-86 (9th Cir. 2011); *Pilman v. Fisher*, No. 2:20-CV-1771-

20   WBS-DMC-P, 2021 U.S. Dist. LEXIS 47019, at *7 (E.D. Cal. Mar. 11, 2021).  Consequently,

21   only if the Court determines that the delay between the denial of the first state petition by the

22   superior court (March 27, 2019) and the filing of third petition filed in state supreme court (March

23   30, 2020) was "reasonable" is Holguin entitled to tolling.  *Robinson*, 9 Cal. at 901.  The Court

24   must now determine whether the state court would find the 368-day delay reasonable.

25         Turning to the three *Robinson* factors, the Court must first ask whether the petition was

26   presented without "substantial delay."  *Robinson,* 9 Cal.5th at 897.  Notably, a 368-day delay is

27   considerably longer than the 120-day period of California's safe harbor.  *Id*.  Thus, the Court

28   finds the delay substantial and not reasonable under state law.  The Court now turns to the other

1   two factors.[4]  Under the second factor, where a petition was filed with substantial delay, a petition

2   may yet be considered on the merits if the "petitioner can demonstrate *good cause* for the delay."

3   *Id*. (emphasis in original).  As explained *infra*, Petitioner has not demonstrated that he had good

4   cause for the delay.  Third, a petition filed without good cause for substantial delay will be

5   considered if it falls under one of four narrow exceptions.  *Id*.  Only three of the four exceptions

6   are relevant to noncapital cases: (1) the "'error of constitutional magnitude led to a trial that was

7   so fundamentally unfair that absent the error no reasonable judge or jury would have convicted

8   the petitioner;'" (2) "'the petitioner is actually innocent of the crime or crimes of which he or she

9   was convicted;'" and (3) "'the petitioner was convicted or sentenced under an invalid statute.'"

10   *In re Reno*, 55 Cal. 4th 428, 460 (Cal. 2012) (quoting *Robbins*, 18 Cal. 4th at 780).  Petitioner has

11   not presented any evidence of a constitutional error leading to a fundamentally unfair trial, or that

12   he is actually innocent of his crime of conviction, or that he was convicted under an invalid

13   statute.  Indeed, Holguin entered a guilty plea to the charges.  Therefore, the untimely third

14   petition was not "properly filed" under state law for purposes of § 2244(d)(2).  Because the third

15   petition was untimely under state law "none of the time before or during the court's consideration

16   of that petition is statutorily tolled."  *Bonner v. Carey*, 425 F.3d 1145, 1149 (9th Cir. 2005).

17     In summary, giving Holguin the benefit of 36 days of tolling for his first state habeas

18   petition and finding Holguin is not entitled to any tolling for his second petition or third petitions,

19   the AEDPA clock commenced running again on March 27, 2019 and continued to run for another

20   329 days until it expired on February 19, 2020.[5]  Consequently, Petitioner's federal petition, filed

21   on November 29, 2020, was filed over nine months, or 284 days, after the AEDPA limitations

22   period expired.  In fact, Petitioner concedes that his federal petition was filed over nine months

23   late.  (Doc. No. 14 at 2) (Petitioner "concedes" each of Respondent's calculations, including that

24   Petition filed nine months beyond deadline).

25

26   _____

27   [4] The Court independently addresses the second and third *Robinson* factors because the Respondent fails to
address either of these factors in its Motion.  (*See* Doc. No. 8 at 5-6).

28   [5] At the time Holguin filed his third petition in state supreme court on March 27, 2020, the limitations
period had expired.

1        **B. AEDPA's Statute of Limitations is Not Unconstitutional**

2        Petitioner claims AEDPA's statute of limitations is unconstitutional because it "prejudices

3 prisoners." (Doc. No. 14 at 3). In support, Petitioner points only to California's four-year statute

4 of limitations for contract claims. *Id*.

5        Petitioner's argument is foreclosed by binding precent. *Ferguson v. Palmateer*, 321 F.3d

6 820, 823 (9th Cir. 2003) ("As we have previously held, section 2244(d)(1) is not a per se

7 violation of the Suspension Clause."); *Green v. White,* 223 F.3d 1001, 1003 (9th Cir. 2000)

8 (finding that AEDPA's one-year limitations period leaves petitioners with a reasonable

9 opportunity to have their federal claims heard).

10        **C. Equitable Tolling is Not Appropriate in This Case**

11        Holguin argues he is entitled to equitable tolling. Specifically, Holguin raises the

12 following grounds as a basis for equitable tolling: (1) mental health issues, including related

13 suicide attempts and crisis bed response, (2) the Covid-19 pandemic and lockdown; (3) loss of

14 legal materials during flood; (4) lack of legal knowledge; and (5) lack of access to legal counsel.

15 (Doc. No. 14 at 2). Respondent argues that Petitioner has not met his burden to demonstrate he is

16 eligible for equitable tolling. (Doc. No. 8 at 6-10). Respondent submits extensive medical

17 records for Petitioner. (*See generally* Doc. No. 22).

18        The limitation period in 28 U.S.C. § 2244(d), is subject to equitable tolling. *Holland v.*

19 *Florida*, 560 U.S. 631, 645 (2010). Equitable tolling is available only if a petitioner shows: "(1)

20 that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood

21 in his way and prevented timely filing." *Id*. at 649. To show "extraordinary circumstances," a

22 petitioner must show that "the circumstances that caused his delay are both extraordinary and

23 beyond his control"—a high threshold. *Menominee Indian Tribe of Wisconsin v. United States*,

24 136 S. Ct. 750, 756 (2016). "The requirement that extraordinary circumstances 'stood in [a

25 petitioner's] way' suggests that an *external* force must cause the untimeliness. *Waldron-Ramsey*

26 *v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (emphasis added). Furthermore, a petitioner

27 must show that the extraordinary circumstances *caused* the untimely filing of his habeas petition.

28 *See Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010) (citing *Spitsyn v. Moore*, 345 F.3d 796,

799 (9th Cir. 2003) (explaining that equitable tolling is available only when the extraordinary circumstances were the cause of the petitioner's untimeliness); *Smith v. Davis*, 953 F.3d 582, 595 (9th Cir. 2020) ("Whether an impediment caused by extraordinary circumstances prevented timely filing is a 'causation question.'").

To demonstrate that he has been pursuing his rights diligently, a petitioner must show that he has "been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Davis*, 953 F.3d 5 at 598-99.  In other words, "when [a petitioner] is free from the extraordinary circumstance, he must also be diligent in actively pursuing his rights." *Id*. at 599.  The diligence required for equitable tolling does not have to be maximum feasible diligence, but rather reasonable diligence.  *Holland v. Florida*, 560 U.S. at 653.  And the court is not to impose a rigid impossibility standard on petitioners, especially not on *pro se* prisoner litigants "who have already faced an unusual obstacle beyond their control during the AEDPA litigation period."  *Fue v. Biter*, 842 F.3d 650, 657 (2016) (quoting *Sossa v. Diaz*, 729 F.3d 1225, 1236 (9th Cir. 2013)).  However, "in every instance reasonable diligence seemingly requires the petitioner to work on his petition with some regularity—as permitted by his circumstances—until he files it in the district court."  *Davis*, 953 F.3d at 601.  Because Petitioner must show diligence before, during, and after extraordinary circumstances prevented him from filing, the relevant time for the Court's analysis is December 12, 2018, the day the statute of limitations began to run, to November 29, 2020, the day petitioner filed his federal petition.  *See Davis*, 953 F.3d at 598-99.  Admittedly, "the threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule."  *Miranda v. Castro*, 2929 F. 3d 1062, 1066 (9th Cir. 2002) (citations omitted).

### 1. Mental Impairment

Petitioner claims that his mental illness prevented him from timely filing his petition.  In *Calderon v. United States*, the Ninth Circuit acknowledged that a "habeas petitioner's mental incompetency [is] a condition that is, obviously, an extraordinary circumstance beyond the prisoner's control" which might justify equitable tolling.  163 F.3d 530, 541 (9th Cir. 1998),

reversed on other grounds by *Woodford v. Garceau*, 538 U.S. 202 (2003). This requires the petitioner to demonstrate "a mental impairment so severe that the petitioner was unable personally either to understand the need to timely file or prepare a habeas petition, and that impairment made it impossible under the totality of the circumstances to meet the filing deadline despite petitioner's diligence." *Bills v. Clark*, 628 F.3d 1092, 1093 (9th Cir. 2010). "A petitioner's mental impairment might justify equitable tolling if it interferes with the ability to understand the need for assistance, the ability to secure it, or the ability to cooperate with or monitor assistance the petitioner does secure." *Id.* at 1093. "The petitioner therefore always remains accountable for diligence in pursuing his or her rights." *Id.* at 1100. A habeas petitioner must show that "mental incompetence in fact caused him to fail to meet the AEDPA filing deadline." *Laws v. Lamarque*, 351 F.3d 919. 923 (9th Cir. 2003).

> To obtain equitable tolling because of mental impairment:
>
> (1) *First*, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control by demonstrating the impairment was so severe that either:
>
>> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>>
>> (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) *Second*, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

*Milam v. Harrington*, 953 F.3d 1128, 1132 (9th Cir. 2020) (quoting *Bills*, 628 F.3d at 1099-1100). Equitable tolling for a mental impairment does not "require a literal impossibility," but instead only "a showing that the mental impairment was "a but-for cause of any delay." *Forbess v. Franke*, 749 F.3d 837, 841 (9th Cir. 2014) (quoting *Bills*, 628 F.3d at 1100).

In cases of mental illness, courts have required a petitioner to show that his symptoms were so severe as to prevent him from timely filing his petition. *See Taylor v. Knowles*, No. CIV S-07-2253 WBS EFB P, 2009 U.S. Dist. LEXIS 20110, at *19 (E.D. Cal. 2009) (finding that a

petitioner who suffered from schizophrenia, depression, and auditory hallucinations failed to show how these ailments prevented in fact petitioner from filing his federal habeas petition in a timely manner).  Suicidal ideation and depression do not necessarily make an inmate incompetent to file a habeas petition.  *See Howell v. Roe*, No. C 02-1824 SI (pr), 2003 U.S. Dist. LEXIS 2458, at *13, (C.D. Cal. 2003) (finding that a petitioner who was suicidal for a period years before the filing deadline failed to show how his mental state prevented him from timely filing his habeas petition and noting that "being suicidal and/or depressed does not make an inmate incompetent"); *Day v. Ryan*, No. CV-13-0952-PHX-GMS (JFM), 2014 U.S. Dist. LEXIS 34630, at *18 (D. Az. 2014) (finding that a petitioner's "vague descriptions of depression and despondency" did not excuse his filing delay and noting that such emotional states are "not at all uncommon among those serving a life sentence"); *Shafer v. Knowles*, No. C03-1165SI(PR), 2003 U.S. Dist. LEXIS 14170, at *2 (N.D. Cal. Aug. 14, 2003) (holding no equitable tolling where petitioner was in a mental health facility, had twice attempted suicide, had "crisis bed stays" and was taking medication but failed to show mental incompetence during relevant time period).

Petitioner submits various medical records to support his request for equitable tolling. (*See generally* Doc. No. 14).  Petitioner states that he was a part of CDCR's enhanced outpatient mental health program ("EOP"), takes psychiatric medications, and had been transferred to a medical facility during the "habeas corpus litigation process."  (Doc. No. 1 at 8, 14).  Petitioner states that he was diagnosed with schizo-affective disorder with auditory, visual, and tactile hallucinations upon entering the state prison system.  (Doc. No. 1 at 14, Doc. No. 14 at 13). Petitioner states that he suffers from delusions that cause a state of paranoid fantasy and depression.  (Doc. No. 1 at 21, Doc. No. 14 at 4).  Petitioner states that his mental health issues "were that of a level reaching incompetency."  (Doc. No. 14 at 3).  Petitioner states that he was on suicide watch for multiple periods of days or weeks, in which his legal materials and documents were taken from him, and that he has attempted suicide multiple times.  (Doc. No. 1 at 20, Doc. No. 14 at 4).  Petitioner also states that his mental health medications made him lethargic and exhausted.  (Doc. No. 14 at 13).  Although Petitioner states that his mental health symptoms are

1   currently in remission due to his medication regimen, he does not explain when his symptoms

2   began to subside.  (Doc. No. 14 at 13).

3          As discussed previously, the federal statute of limitations began running on December 12,

4   2018.  The information Petitioner provides about his prison placements before December 12,

5   2018 is thus not relevant.  (Doc. No. 1 at 20).  For example, Petitioner presents evidence that he

6   was placed on suicide watch in February, March, and August of 2016 and, again in October 2017,

7   but this considerable amount of time was before his state court judgment was final in December

8   2018.  (Doc. No. 14 at 66-67, 70-76, 89).  Petitioner also submits psychiatry progress notes from

9   2016 and 2017, again well before Petitioner's state court judgment became final.  (Doc. No. 14 at

10  81-87, 90-94).  Of relevance here is Petitioner's placement on suicide watch in January 2019

11  upon arrival at the Vacaville Correctional Medical Facility.  (Doc. No. 1 at 20).  Moreover, on

12  January 26, 2020, Petitioner was moved from the enhanced outpatient program, the highest level

13  of care, to the regular building.  (Doc. No. 14 at 4).  Petitioner was then transferred to the Kern

14  Valley State Prison in July 2020, where he again was placed in the EOP.  (Doc. No. 1 at 20).

15  Despite these placements, Petitioner has not shown that his symptoms, such as delusions and

16  depression, were persistent throughout the relevant period.  *See Forbess*, 749 F.3d at 840 (Court

17  "explicitly found that [the petitioner's] delusions persisted throughout the relevant period," and he

18  was incapable of "rationally understanding the necessity of filing a timely habeas petition.").

19  Moreover, Petitioner has not shown that he was diligent during the periods he was not suffering

20  from symptoms of mental illness.

21         Respondent concedes that at times Petitioner was suffering from mental health issues but

22  argues the extent of Petitioner's mental health issues did not prevent him from timely filing a

23  federal petition.  (*See generally* Doc. No. 21 at 10-25).  Respondent provides a monthly summary

24  of Petitioner's mental health status for the relevant period.  (*Id*.).  Petitioner's symptoms

25  fluctuated month-to-month.  (*Id*.).  At times, Petitioner felt depressed, suffered from

26  hallucinations, was non-compliant with his medication, and felt suicidal.  (*See generally* Doc. No.

27  22-1, 22-3).  However, at other times Petitioner was stable, taking his medications as prescribed,

28  his mood was "great," he was "doing better," and "no longer feeling suicidal" or "depressed or

13

1  anxious." (Doc. No. 22-3 at 580, 584, 1045, 1170, 1690). Petitioner was placed in a mental

2  health crisis bed for a brief 2-day period, from July 29, 2019, to July 31, 2019, for being suicidal

3  (*Id*. at 156-159). At most, Petitioner's medical records demonstrate that he was intermittently

4  impaired, not continuously impaired, by mental illness during the relevant period.

5       Moreover, Petitioner's prison activities demonstrate he was not suffering from mental

6  illness to such an extent as to prevent him from timely filing a federal petition. For example,

7  during the relevant period Petitioner stated that he was reading complex books, such as legal and

8  religious texts, and writing two books. (*Id*. at 50, 461, 475, 1080, 1018). Petitioner also

9  completed a fifteen-week course which required him to produce daily writing assignments. (Doc.

10 No. 22-1 at 774). And Petitioner participated in multiple group and individual therapy sessions.

11 (*See, e.g.*, Doc. No. 22-3 at 201-438).

12      Most telling is Holguin's ability to file multiple other petitions and complaints during the

13 relevant period. Holguin's ability to file these complaints and petitions belies his assertion that

14 his mental state prevented him from timely filing his federal petition. *See Yeh v. Martel*, 751 F.3d

15 1075, 1078 (9th Cir. 2014) (Petitioner was not entitled to equitable tolling where he was able to

16 file state habeas petitions and repeatedly sought administrative and judicial remedies.); *Gaston v.*

17 *Palmer*, 417 F.3d 1030, 1035 (9th Cir. 2005), *modified on other grounds*, 447 F.3d 1165 (9th Cir.

18 2006) ("Because [petitioner] was capable of preparing and filing state court petitions [during the

19 limitations period], it appears that he was capable of preparing and filing a [federal] petition

20 during the time in between those dates."); *Walker v. Schriro*, 141 Fed. App'x. 528, 530-31 (9th

21 Cir. 2005) (holding that where petitioner was able to complete various filings in state court close

22 to the dates of his AEDPA filing period, the district court reasonably concluded that he was

23 capable of filing his federal petition on time and was not entitled to equitable tolling); *Jones v.*

24 *Malfi*, No. EDCV 06-00675-DDP (MLG), 2009 U.S. Dist. LEXIS 137382, at *25-27 (C.D. Cal.

25 Jan. 30, 2009) ("That Petitioner has filed so many cogent, relevant pleadings and motions on

26 numerous different cases during the time period for which he claims entitlement to equitable

27 tolling strongly suggests that his mental illness did not actually prevent him from timely filing a

28 habeas petition.").

Likewise, Holguin filed *Holguin v. Thackery, et al.*, 1:19-cv-00177 AWI BAM (E.D. Cal. Mar. 28, 2019), a prisoner civil rights complaint under § 1983, in which he filed two objections and a motion for reconsideration.  As mentioned previously, Petitioner filed an earlier habeas petition during the relevant period, in which he filed an amended petition and a motion to stay. *See Holguin v. On Habeas Corpus*, 1:19-cv-00380 LJO SKO (E.D. Cal. June 13, 2019). Petitioner also filed and is currently litigating another civil rights action, *Holguin v. Bell, et al.*, 1:19-cv-00757 HBK (E.D. Cal. Mar. 21, 2019), in which he has filed a notice, various motions, and an opposition to a motion to dismiss.  Moreover, Petitioner filed three state habeas petitions during this relevant time, in January 2019, January 2020, and March 2020. (Doc. Nos. 10-5, 10-7, 10-9).

Holguin accordingly shows no mental impairment "so severe" that he could not rationally or factually understand the need to timely file his federal petition or that his mental state rendered him unable to prepare and file his federal habeas petition—especially considering he was able to file multiple other lawsuits and petitions during the relevant period. *Milam*, 953 F.3d at 1132. Moreover, Respondent has presented evidence that Petitioner was reading complex materials and even participating in a course with writing assignments during the relevant period.  Although there were times when Holguin was suffering from mental illness, there were certainly multiple periods of time where his mental illness was not so severe as to prevent him from timely filing a federal petition.  Further, Holguin has not shown diligence during the relevant period.  Holguin does not state what steps he took to diligently pursue his rights when he did not have impairments during this relevant time.  Accordingly, the undersigned finds that Petitioner is not entitled to equitable tolling for his mental illness.

### 2. Lockdowns and Law Library Access

Petitioner claims his lack of access to the prison's law library due to temporary prison lockdowns and the coronavirus pandemic lockdown entitled him to equitable tolling.  (Doc. No. 1 at 19).  In general, unpredictable lockdowns or library closures do not constitute extraordinary circumstances warranting equitable tolling. *See United States v. Van Poyck*, 980 F. Supp. 1108, 1111 (C.D. Cal. 1997) (inability to secure copies of transcripts from court reporters and

1    lockdowns at prison lasting several days and allegedly eliminating access to law library were not

2    extraordinary circumstances and did not equitably toll one-year statute of limitations).

3    "Petitioner's . . . difficulties and disruptions he encounters with sporadic prison lockdowns are

4    conditions of prison life that are no different than those experienced by the vast majority of

5    incarcerated prisoners attempting to file petitions for writ of habeas corpus.  By definition,

6    therefore, such circumstances in themselves are not extraordinary and do not justify equitable

7    tolling."  *See Id.*; *Galaz v. Harrison*, No. 1:04-cv-05383-TAG HC, 2006 U.S. Dist. LEXIS 17833,

8    at *16 (E.D. Cal. Mar. 27, 2006).

9         Petitioner claims three two-week lockdowns in his prison between Christmas 2019 and

10   early March 2020 affected his access to the law library.  (Doc. No. 14 at 7).  Petitioner also states

11   that normal access to the law library was limited in general and, at times, his mental health

12   appointments conflicted with his law library time.  (Doc. No. 14 at 8-9).  Petitioner further states

13   that every year the prison goes through a two- to three-month lockdown for a yearly search and

14   that in 2018-2019, inmates were rioting and stabbing each other, causing lockdowns periodically.

15   (Doc. No. 14 at 18).  The Court finds that these periodic lockdowns are normal conditions of

16   prison life and do not entitle Petitioner to equitable tolling.

17        As for lockdowns caused by the COVID-19 pandemic, Petitioner fails to show how the

18   pandemic caused him to untimely file.  Petitioner states that he had no law library access from

19   early March 2020 until his filed the instant petition.  (Doc. No. 1 at 22).  Respondent argues that

20   because the restrictions on law library access did not begin until March 2020, at least two weeks

21   after the federal statute of limitations expired on February 19, 2020, Petitioner has not

22   demonstrated how his limited access to the law library prevented him from timely filing his

23   petition.  (Doc. No. 8 at 8, Doc. No. 21 at 7).  The Court agrees with Respondent—Petitioner has

24

25

26

27

28

1    failed to show how the COVID-19 related law library closure that occurred <u>after</u> the statute of

2    limitations had elapsed in this case prevented him from timely filing his petition.

3                          **3. Loss of Legal Documents due to Flood**

4           Petitioner claims he lost his legal documents due to flooding in his cell, but he does not

5    provide the dates of the flood.[6]  (Doc. No. 14 at 7).  "To obtain equitable tolling on such grounds

6    (loss of legal documents), a petitioner must identify the particular document that was needed and

7    show he could not procure it in time to file a federal habeas petition."  *Johnson v. Asuncion*, No.

8    C 16-5989 WHA (PR), 2017 U.S. Dist. LEXIS 152310, at *5 (N.D. Cal. Sept. 19, 2017).

9    Respondent provides documentation which shows that on August 1, 2018, Petitioner's toilet was

10   not flushing properly.  (Doc. No. 22-1 at 931-32).  Petitioner submitted a grievance on August 8,

11   2018 in which he stated that his toilet overflowed and destroyed his "legal work."  (*Id*. at 924,

12   927, 929).  This complaint was rejected in part at the first level of review because Petitioner did

13   not identify what property was destroyed.  (*Id*. at 931-32).  Here, Petitioner does not explain

14   which documents were lost and which of these lost documents were needed to file his habeas

15   petition.  Further, Petitioner does not describe any efforts he took to obtain additional copies of

16   those legal documents.  Finally, the Court notes that this period was before Petitioner's conviction

17   became final and not during the relevant period.  Accordingly, the Court finds Petitioner is not

18   entitled to equitable tolling due to the loss of his legal documents based on the record.

19                               **4. Ignorance of the Law**

20          Petitioner submits his lack of legal knowledge entitled him to equitable tolling.  (Doc. No.

21   14 at 9-10).  Petitioner's argument is unavailing.  It is well established that a prisoner's

22   educational deficiencies, ignorance of the law, or lack of legal expertise is not an extraordinary

23   circumstance and does not equitably toll the limitations period.  *See Rasberry v. Garcia*, 448 F.3d

24   1150, 1154 (9th Cir. 2006) ("A *pro se* petitioner's lack of legal sophistication is not, by itself, an

25   extraordinary circumstance warranting equitable tolling."); *Waldron-Ramsey v. Pacholke*, 556

26

27   ────────────────────
     [6] The Court notes that Petitioner did provide the date of the flooding in his untimely and unauthorized
28   amended opposition the Respondent's motion to dismiss.  (Doc. No. 23 at 2, 6).  The flood occurred on
     August 22, 2018.  This was before Petitioner's conviction was final.

1   F.3d 1008, 1013, n.4 (9th Cir. 2009) ("While [petitioner's] *pro se* status is relevant, we have held

2   that a *pro se* petitioner's confusion or ignorance of the law is not, itself, a circumstance

3   warranting equitable tolling); *Williamson v. Hubbard*, 27 Fed. App'x. 733, 2001 (9th Cir. 2001)

4   (holding misunderstanding of the law does not entitle petitioner to equitable tolling).  Thus,

5   Holguin's alleged ignorance of the law is not grounds for equitable tolling.

6   **5. Lack of Legal Assistance**

7        While in the EOP, Petitioner states that he could not find other inmates to assist him and

8   could not ask staff to assist him because they are "legally bound not to assist."  (Doc. No. 14 at

9   5).  Petitioner also states that he was unable to find a lawyer to assist him in filing his habeas

10   petition.  (*Id*.).  In 2016 and 2018, Petitioner sought the assistance of his appellate lawyer in

11   providing him with habeas corpus case examples and his trial court record.  (*Id*. at 33-34, 42-43).

12   In 2017, Petitioner's appellate lawyer told Petitioner that his appointment did not extend to the

13   filing of a habeas petition.  (*Id*. at 45).

14        As an initial matter, there is no right to counsel for collateral proceedings.  *See*

15   *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  Therefore, Petitioner's lack of counsel is not

16   an extraordinary circumstance that prevented him from timely filing his petition.  Likewise,

17   Petitioner's lack of legal assistance from other inmates is not an extraordinary circumstance.  A

18   lack of access to a jailhouse lawyer is an "'ordinary prison limitation.'"  *Dominguez v. Paramo*,

19   No. 5:16-CV-00816-JVS (SK), 2017 U.S. Dist. LEXIS 13419, at *5 (C.D. Cal. Jan. 31, 2017)

20   (quoting *Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009)).

21        Moreover, Petitioner must show that he was diligent in pursuing his rights despite a lack

22   of assistance.  "The 'availability of assistance is an important element to a court's diligence

23   analysis,' but . . . it is only 'part of the overall assessment of the totality of circumstances that

24   goes into the equitable determination.'"  *Milam v. Harrington*, 953 F.3d 1128, 1132 (9th Cir.

25   2020) (quoting *Bills*, 628 F.3d at 1101).  "The petitioner . . . always remains accountable for

26   diligence in pursuing his or her rights."  *Bills*, 628 F.3d at 1100.  Here, Petitioner remained

27   accountable for his own diligence in pursuing his rights, regardless of whether he had the

28   assistance of a jailhouse lawyer.  Thus, the Court finds Petitioner is not entitled to equitable

18

tolling on this final ground.

### D.  Petitioner is not Entitled to an Evidentiary Hearing

Petitioner incorporates a request for an evidentiary hearing on the issue of equitable tolling in his Petition and opposition.  (Doc. No. 1 at 22, Doc. No. 14 at 3).  "Where the record is amply developed, and where it indicates that the petitioner's mental incompetence was not so severe as to cause the untimely filing of his habeas petition, a district court is not obligated to hold evidentiary hearings to further develop the factual record, notwithstanding a petitioner's allegations of mental incompetence."  *Orthel v. Yates*, 795 F.3d 935, 938-39 (9th Cir. 2015) (quoting *Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010).  Here, Holguin and Respondent submitted Holguin's prison records, including his health records.  (Doc. No. 14 at 66-94; Doc. Nos. 22-4, 22-5, 22-6, 22-7, 22-8, 22-9).  The Court finds that the record is thoroughly developed as to each of Holguin's allegations he cites to in support of his equitable tolling argument. Therefore, the Court finds an evidentiary hearing is not warranted on the issue of equitable tolling.

### E.  Petitioner is not Entitled to Appointment of Counsel

Petitioner incorporated a request for the appointment of counsel in his Petition and his Opposition.  (Doc. No. 1 at 22, Doc. No. 14 at 15).  There is no automatic, constitutional right to counsel in federal habeas proceedings.  *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *Anderson v. Heinze*, 258 F.2d 479, 481 (9th Cir. 1958).  The Criminal Justice Act, 18 U.S.C. § 3006A, however, authorizes this court to appoint counsel for a financially eligible person who seeks relief under § 2254 when the "court determines that the interests of justice so require."  *Id*. at § 3006A(a)(2)(B); *see also Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986).  Moreover, the Rules Governing Section 2254 Cases in the United States District Courts require the court to appoint counsel: (1) when the court has authorized discovery upon a showing of good cause and appointment of counsel is necessary for effective discovery; or (2) when the court has determined that an evidentiary hearing is warranted.  *Id*. at Rs. 6(a) and 8(c).

Here, Petitioner was able to file his habeas petition, move for an extension of time, and timely file an opposition to Respondent's motion to dismiss without the aid of counsel.  The

1    Court finds that the claims raised in the petition do not appear to be complex.  Further, the Court

2    does not find the circumstances of this case indicate that appointed counsel is necessary to

3    prevent due process violations.  The Court has not authorized discovery in this case and has not

4    determined that an evidentiary hearing is warranted.  Accordingly, based upon the record, the

5    Court finds Petitioner has not demonstrated that appointment of counsel is necessary.

6                        **IV. CERTIFICATE OF APPEALABILITY**

7             State prisoners in a habeas corpus action under § 2254 do not have an automatic right to

8    appeal a final order.  *See* 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36

9    (2003).  To appeal, a prisoner must obtain a certificate of appealability.  28 U.S.C. § 2253(c)(2);

10   *see also* R. Governing Section 2254 Cases 11 (requires a district court to issue or deny a

11   certificate of appealability when entering a final order adverse to a petitioner); Ninth Circuit Rule

12   22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997).  Where, as here, the court

13   denies habeas relief on procedural grounds without reaching the merits of the underlying

14   constitutional claims, the court should issue a certificate of appealability only "if jurists of reason

15   would find it debatable whether the petition states a valid claim of the denial of a constitutional

16   right and that jurists of reason would find it debatable whether the district court was correct in its

17   procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "Where a plain procedural bar

18   is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist

19   could not conclude either that the district court erred in dismissing the petition or that the

20   petitioner should be allowed to proceed further."  *Id*.  Here, reasonable jurists would not find the

21   undersigned's conclusion debatable or conclude that petitioner should proceed further.  The

22   undersigned therefore recommends that a certificate of appealability not issue.

23             According it is **ORDERED**:

24             1.  Petitioner's request for an evidentiary hearing on the issue of equitable tolling

25   incorporated in his Petition and Opposition (Doc. No. 1 at 22, Doc. No. 14 at 3) is DENIED.

26             2.  Petitioner's request for the appointment of counsel incorporated in his Petition and

27   Opposition.  (Doc. No. 1 at 22, Doc. No. 14 at 15) is DENIED.

28             It is further **RECOMMENDED**:

1      1.  Respondent's Motion to Dismiss (Doc. No. 8) be GRANTED.

2      2.  The Petition (Doc. No. 1) be DISMISSED as untimely with prejudice.

3      3.  Petitioner be denied a certificate of appealability.

4                                        **<u>NOTICE TO PARTIES</u>**

5         These findings and recommendations will be submitted to the United States District Judge

6  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within fourteen

7  (14) days after being served with these findings and recommendations, a party may file written

8  objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

9  Findings and Recommendations."  A response to any Objections must be file within fourteen (14)

10  of the date of service of the Objections.  Parties are advised that failure to file objections within

11  the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d

12  834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

13

14  Dated:    August 30, 2021

15                               HELENA M. BARCH-KUCHTA

16                               UNITED STATES MAGISTRATE JUDGE

21